634 So.2d 1054 (1993)
Eduardo LOPEZ, Petitioner,
v.
Harry K. SINGLETARY, etc., Respondent.
Eduardo LOPEZ, Appellant,
v.
STATE of Florida, Appellee.
Nos. 75847, 78228.
Supreme Court of Florida.
September 2, 1993.
Rehearings Denied December 9, 1993 and April 20, 1994.
*1055 Michael J. Minerva, Interim Capital Collateral Representative, Gail E. Anderson, Asst. CCR and Todd G. Scher, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Mary Leontakianakos, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
Eduardo Lopez, a prisoner on death row, petitions this Court for a writ of habeas corpus and appeals the trial court's denial of his motion for postconviction relief. We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.; Fla.R.Crim.P. 3.850. We deny all relief except for remanding to the trial court for an in-camera inspection of the sealed portions of the state attorney's files to determine if those sealed portions should have been disclosed to Lopez.
In January 1983 Lopez and two companions broke into a woman's home and shot her and her eight-year-old son. The boy died, and, under a plea agreement, Lopez received a term of life imprisonment in exchange for his testimony against the accomplices. When Lopez refused to testify, the court rescinded the agreement and sentenced him to death. This Court affirmed the trial court's actions on direct appeal.[1]Lopez v. State, 536 So.2d 226 (Fla. 1988).
Governor Martinez signed a death warrant for Lopez in the spring of 1990, and Lopez filed a petition for writ of habeas corpus and asked for a stay of execution, which this Court granted. In September 1990 Lopez filed a rule 3.850 motion with the trial court, and that court denied the motion without an evidentiary hearing in June 1991. In October 1992 Lopez filed a supplemental habeas petition raising additional issues.

3.850 Motion
Lopez raises eighteen points in appealing the denial of his postconviction motion: (1) state attorney denied Lopez access to public records; (2) the court erred in not holding an evidentiary hearing; (3) Castro's[2] abandonment of Lopez constituted ineffective assistance; (4) use of hypnotically induced testimony violated Lopez' rights; (5) Castro rendered ineffective assistance regarding the *1056 guilty plea; (6) Haymes was ineffective regarding the sentencing; (7) the mental health experts did not conduct competent evaluations; (8) the court applied an improper automatic aggravator; (9) Lockett[3] error occurred; (10) the court improperly refused to find mitigators; (11) Castro rendered ineffective assistance by testifying at the plea enforcement hearing; (12) the absence of an interpreter violated Lopez' rights; (13) Lopez was absent from critical stages; (14) Brady[4] violations occurred; (15) the avoid arrest aggravator was improperly applied; (16) Lopez' guilty plea was not knowing and voluntary; (17) Lopez was incompetent; and (18) Lopez did not knowingly and voluntarily waive the sentencing jury. Postconviction motions are not to be used as second appeals. Medina v. State, 573 So.2d 293 (Fla. 1990). Issues that were, or could have been, raised on direct appeal are not cognizable on collateral attack. Johnson v. State, 593 So.2d 206 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). Therefore, the following claims are procedurally barred because they were or could have been raised on direct appeal[5]: (4) hypnotically induced testimony;[6] (7) mental health exams; (8) automatic aggravator; (9) Lockett error; (10) mitigators; (12) interpreter; (13) absence; (14) Brady violation;[7] (15) applicability of an aggravator; (16) propriety of guilty plea; (17) competency; and (18) jury waiver.
If a postconviction motion is denied without an evidentiary hearing, the motion and record must show that no relief is warranted. Roberts v. State, 568 So.2d 1255 (Fla. 1990). As set out above, most of the issues raised in the postconviction motion are procedurally barred. Thus, as demonstrated by the motion itself and the record, no evidentiary hearing was necessary regarding them. The trial court attached portions of the record to the order denying relief, and we agree that an evidentiary hearing on the remaining issues was not needed.
Turning to the claims of ineffective assistance of counsel, we agree with the trial court that they either have no merit or are procedurally barred. In issue (3) Lopez argues that Castro improperly abandoned his representation. As found by the trial court this was not so. Castro represented Lopez through his guilty plea and Haymes represented him thereafter. Lopez has not shown the substandard performance by counsel that prejudiced him, as required by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Instead, any prejudice Lopez may have suffered was the consequence of his willful failure to cooperate and uphold his part of the plea agreement.
In issue (5) Lopez argues that Castro rendered ineffective assistance because he failed to investigate mental health issues and allowed Lopez to enter a guilty plea while he was incompetent. On direct appeal Lopez attacked the voluntariness of his guilty plea and his competency to enter that plea and we found his arguments meritless. Lopez, 536 *1057 So.2d at 228-30. Lopez was a difficult client, but as we noted on direct appeal, "no question regarding Lopez' competency arose until after the 1985 hearing." Id. at 230. See Mills v. State, 603 So.2d 482, 485 (Fla. 1992) (defendant's mental condition not at issue in every criminal case). Charges of ineffective assistance of counsel cannot be used to get around the rule that postconviction proceedings cannot be used as a second appeal. Medina Thus, this claim is procedurally barred now, the substance of it having been found meritless on direct appeal.
Issue (11), alleging that Castro rendered ineffective assistance by testifying at the plea revocation hearing, suffers from a similar defect. Lopez' motion to vacate the plea called into question the effectiveness of Castro's advocacy. When the state called Castro at the plea revocation hearing, Haymes objected that Castro's testifying would violate the attorney/client privilege, and the court overruled that objection because Castro's knowledge was crucial to determining the voluntariness of the plea. Cf. Wilson v. Wainwright, 248 So.2d 249, 259 (Fla. 1st DCA 1971) ("a lawyer who represents a client in any criminal proceeding may reveal communications between him and his client when accused of wrongful conduct by his client concerning his representation where such revelation is necessary to establish whether his conduct was wrongful as accused."); Turner v. State, 530 So.2d 45 (Fla. 1987), cert. denied, 489 U.S. 1040, 109 S.Ct. 1175, 103 L.Ed.2d 237 (1989). Thus, the substance of this issue could have been raised on direct appeal and is now barred because it was not so raised. Again, a claim of counsel's ineffectiveness cannot be used to overcome the rule that collateral attacks cannot be used as a second appeal.[8]
Lopez attacks Haymes' effectiveness in issue (5) by arguing that Haymes failed to investigate his early life in Cuba, did not attack the failure to prosecute his accomplices, failed to develop mental health mitigating evidence, and improperly allowed Lopez to waive a sentencing jury. In denying this claim the trial court wrote that at sentencing it had been "amply apprised of all relevant mitigating and aggravating factors when making its decision, including the presentence investigation and the reports of three mental health experts. Counsel also filed a Written Notice of Mitigating Circumstances... . Additionally, Defendant knowingly and voluntarily chose not to testify on his own behalf and assisted in the decision to waive the jury in the penalty proceedings."[9] Lopez has not shown a deficient performance by Haymes that caused prejudice to Lopez, and we agree with the trial court's conclusion that the record does not support this claim. Cf. Mills; Medina.
Pursuant to chapter 119, Florida Statutes (1989), Lopez' current counsel requested the records of a polygraph examiner and of the doctor that hypnotized the victim's mother as well as access to the state attorney's files. The state attorney's office turned over its files except for portions it considered work product and sealed. The examiner and doctor refused to turn over their records except under court order. In issue (1) Lopez now argues that he was denied access to these records improperly.
In State v. Kokal, 562 So.2d 324, 327 (Fla. 1990), we held that state attorneys must give access to those portions of their files not exempt from disclosure under chapter 119 and stated that if a state attorney "had a *1058 doubt as to whether he was required to disclose a particular document, he should have furnished it in camera to the trial judge for a determination." The instant state attorney's office had no doubt that the portions of its records that it sealed were work product and, thus, exempt from disclosure. We recently clarified this area and held that it is for a judge to determine, in an in camera inspection, whether particular documents must be disclosed. Walton v. Dugger, 634 So.2d 1059 (Fla. 1993). Therefore, we direct the state attorney's office to tender to the trial court the portions of its records that it sealed for an in camera inspection of those documents. If the trial court determines that the sealed documents are exempt from disclosure, the documents will remain sealed. If the court determines that the sealed documents are not exempt, they will be disclosed to Lopez. If those documents reveal any new claims, i.e., claims other than those raised in the instant motion and petition, Lopez will have thirty days from the date of access to file an amended postconviction motion raising those new claims.[10]
Turning to the request for access to the records of the polygraph examiner and the doctor, we disagree with Lopez' contention that the state had the duty to produce those records. In Mendyk v. State, 592 So.2d 1076 (Fla. 1992), we disagreed with the state's argument that defendants seeking disclosure from agencies other than a state attorney's office should pursue their requests with those other agencies through separate civil actions. We have since receded from Mendyk, however, and held that the state attorney is not responsible for giving access to outside agencies' records, but, instead, requests must be made directly to those agencies. Hoffman v. State, 613 So.2d 405 (Fla. 1992).[11] Lopez did not follow this procedure, but in any event, relief is not warranted on this issue. The state attorney gave Lopez a copy of the polygraph examiner's report and several detectives present at the hypnosis session testified in court and through deposition. We agree with the state that access to the personal files that the examiner and the doctor might have would not further Lopez' cause.
As a final word on access to public records, we hold that any postconviction movant dissatisfied with the response to any requested access must pursue the issue before the trial judge or that issue will be waived. Additionally, we understand that the instant motion was handled entirely in writing and that the parties never had the opportunity to appear before the court and argue their positions. We hold, therefore, that in the future in a death case a trial court must give the parties the opportunity to appear in person to argue the postconviction motion and whether an evidentiary hearing is needed.[12]

Habeas Petition
Lopez raises eight issues in his petition for habeas corpus: (1) improper burden shift by the instructions; (2) the sentence rests on an unconstitutional aggravator; (3) the avoid arrest aggravator was improperly found; (4) lack of continuous translation; (5) absence from critical stages; (6) use of nonstatutory aggravators tainted the proceedings; (7) no voluntary, knowing waiver of a sentencing jury; and (8) appellate counsel was ineffective for not attacking Castro's disclosures. "Habeas corpus is not to be used for additional appeals of issues that could have been, should have been, or were raised on appeal or in other postconviction motions." Mills v. Dugger, 559 So.2d 578, 579 (Fla. 1990). Issues (2) through (7), therefore, *1059 are procedurally barred because they should have been or were raised on direct appeal.[13] The allegations in these claims that appellate counsel was ineffective for not raising these issues have no merit because trial counsel did not preserve them for appeal. Thompkins v. Dugger, 549 So.2d 1370 (Fla. 1989) (appellate counsel is not ineffective for failing to raise claims not properly preserved for appeal), cert. denied, 493 U.S. 1093, 110 S.Ct. 1170, 107 L.Ed.2d 1073 (1990).
There is no merit to claim (8).[14] Haymes objected to Castro's testifying at the plea revocation hearing and, thus, preserved the issue for appeal. As set out earlier in this opinion, Lopez attacked Castro's performance in his motion to withdraw his plea, and the trial court correctly held that the attorney/client privilege had been waived and allowed Castro to testify. If appellate counsel had raised the issue, we would not have given Lopez relief. Thus, Lopez has failed to meet the test set out in Strickland v. Washington, i.e., substandard performance that prejudiced him.
Therefore, we affirm the trial court's order denying the motion for postconviction relief, but remand for the trial court to inspect in camera those portions of its records that the state attorney's office sealed to determine if they are exempt from disclosure. We also deny the petition for habeas corpus.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The facts are set out more fully in the opinion on direct appeal.
[2] William Castro represented Lopez in the plea agreement. Keith Haymes replaced Castro as Lopez' attorney for the post-plea-agreement proceedings.
[3] Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
[4] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] Any allegations of ineffectiveness in these claims are without merit.
[6] In Bundy v. State, 471 So.2d 9 (Fla. 1985), cert. denied, 479 U.S. 894, 107 S.Ct. 295, 93 L.Ed.2d 269 (1986), we held that hypnotically induced testimony is inadmissible in Florida. Bundy had not been decided when Lopez pleaded guilty, and Castro testified that he had researched the area and was prepared to deal with it if the case had gone to trial and the issue had arisen. Even though the victim's mother identified Lopez at the sentencing hearing, there is no reasonable probability that his sentence would have been different without her testimony. Lopez confessed and the evidence is more than sufficient to support his guilty plea and death sentence. Cf. Sims v. State, 602 So.2d 1253 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1010, 122 L.Ed.2d 158 (1993); Way v. Dugger, 568 So.2d 1263 (Fla. 1990).
[7] Under Brady the state must disclose evidence favorable to an accused if that evidence is material to guilt or punishment. Evidence is material, however, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Given Lopez' confession and insistence on pleading guilty, coupled with counsels' knowledge about most of the complained-about "evidence," there is no reasonable probability that the result would have been different.
[8] This claim also has no merit. At the revocation hearing Castro testified that, after Lopez admitted his guilt and asked that a plea be negotiated, Castro concluded that with the evidence against Lopez (primarily his confession and his fingerprint being found at the scene) it would be very difficult to secure an acquittal, that after being convicted Lopez would probably be sentenced to death, and that such sentence would probably be affirmed. Castro's testimony demonstrates adequate representation and that he acquiesced in Lopez' desire to plead guilty to secure the best possible result for his client.
[9] This notice advanced the following mitigators: substantial domination by another person; no history of violence; confessed and pleaded guilty; sought to testify against the accomplices; remorse; did not evade the police; model prisoner; diligent worker; acquired specialized training; capacity for rehabilitation; acted under duress; not originally armed; below average intelligence; generally helpful and caring; and strong family commitment.
[10] As we did in Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990), we have decided to dispose of the other issues even though there is a limited remand concerning the public records issue. If the trial judge decides that any sealed record should be disclosed and if any such disclosed material demonstrates that a claim should be revisited, that claim can be raised within the thirty-day period.
[11] We emphasize, however, that only public, not private, records must be disclosed and that agencies and persons that receive public records requests may "raise any defenses to the disclosure which they may deem applicable." Hoffman v. State, 613 So.2d 405, 406 (Fla. 1992).
[12] Of course, if the movant chooses, the opportunity to appear may be waived and the motion disposed of on the written pleadings.
[13] Issue (1) is improperly raised because no jury instructions were given in this case.
[14] The allegation in this issue that trial counsel Haymes was ineffective is not cognizable in this habeas proceeding.