773 So.2d 510 (2000)
Duane Eugene OWEN, Appellant,
v.
STATE of Florida, Appellee.
No. SC92144.
Supreme Court of Florida.
September 21, 2000.
Rehearing Denied November 13, 2000.
*511 Jack W. Crooks, Assistant CCRC and Linda McDermott, Assistant CCRC, Capital Collateral Regional CounselMiddle, Tampa, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, Florida, for Appellee.
PER CURIAM.
Duane Eugene Owen appeals the denial of relief on his first motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.

I. FACTS
The relevant facts involve two separately tried murders: the Worden murder, and the Slattery murder. The present proceeding arises following the denial of postconviction relief in the Worden murder. The Slattery murder is tangential to the present case.

A. The Worden Murder

The facts of the Worden murder are set forth fully in this Court's opinion on direct appeal. See Owen v. State, 596 So.2d 985 (Fla.1992). During the night of May 28, 1984, Owen entered the Boca Raton home of Georgianna Worden, bludgeoned her to death with a hammer as she slept, and sexually assaulted her. Her body was found the next morning by her children as they prepared for school. Owen was arrested and eventually confessed to the crime. He was charged with first-degree murder, sexual battery, and burglary. He was tried and convicted as charged. The court followed the jury's ten-to-two recommendation and imposed a sentence of death based on four aggravating circumstances.[1] The court considered several mitigating circumstances.[2] This Court affirmed the convictions and sentences.

*512 B. The Slattery Murder

The facts of the Slattery murder are set forth fully in this Court's opinion on direct appeal in that case. See Owen v. State, 560 So.2d 207 (Fla.1990). On the night of March 24, 1984, Owen broke into a Delray Beach home and stabbed to death a fourteen-year-old babysitter, Karen Slattery, and sexually assaulted her. He was arrested following the Worden murder and confessed to both the Worden and Slattery murders. Prior to being tried on the Worden murder, he was tried and convicted on the Slattery murder. At sentencing on the Slattery murder, the court followed the jury's recommendation and imposed a sentence of death. This Court reversed the conviction and remanded for retrial because police failed to clarify two equivocal statements Owen made during interrogation on the Slattery crime.
The State later sought relief in state district court on the confession issue in light of the United States Supreme Court's then-recent decision in Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), wherein the Court ruled that once a defendant waives his or her rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the defendant thereafter must clearly invoke those rights during the ensuing interrogation session. See State v. Owen, 654 So.2d 200 (Fla. 4th DCA 1995). The district court certified the issue to this Court, and we granted relief. The Court adopted the Davis rule for use in Florida and remanded for reconsideration of the Slattery confession in light of Davis. See State v. Owen, 696 So.2d 715 (Fla.1997). The trial court ruled the confession admissible and Owen was retried, convicted, and sentenced to death in March 1999 for the Slattery murder.

C. The Lawyers Representing Owen

After Owen had been charged with the above crimes, the trial court appointed the law firm of Kohl, Springer, Springer, Mighdoll, Salnick and Krischer to represent Owen on both murders. (The law firm subsequently was disbanded in January 1986). The two cases were divided among various lawyers in the firm. Krischer and Salnick represented Owen at the hearing on the motion to suppress Owen's omnibus confession to both crimes. At trial on the Worden murder, Owen was represented by Donald Kohl and Craig Boudreau. At the first trial on the Slattery murder, he was represented by Krischer. At the 1999 retrial on the Slattery murder, he was represented by Carey Haughwout. In the present postconviction proceeding on the Worden murder, he is represented by lawyers from Capital Collateral Regional Counsel-Middle Region.

D. The Proceeding Below

On July 31, 1986, after Owen had been convicted and sentenced for the Worden murder, but before this Court had ruled on his appeal, he prematurely filed the present rule 3.850 motion. The postconviction proceeding was stayed pending his appeal; he subsequently was permitted to amend his rule 3.850 motion several times. The trial court held a Huff hearing[3] on the motion on November 5, 1997, after which the court summarily denied a number of claims and scheduled others for evaluation at an evidentiary hearing.[4] At the evidentiary *513 hearing, after the first witness had finished testifying, counsel for Owen informed the court that Owen had decided not to proceed with the hearing; counsel claimed that Owen's attorney-client privilege in the Slattery case would be violated. After confirming with Owen that this indeed was his decision and after explaining to Owen the consequences of his action, the court ended the hearing and issued a brief order denying relief on the rule 3.850 motion. Owen appeals, raising numerous claims.[5]

II. OWEN'S REFUSAL TO PROCEED
As noted above, on November 5, 1997, the trial court in the Worden case granted an evidentiary hearing on five claims involving ineffectiveness and conflict issues. The evidentiary hearing was held on December 8, 1997. Before the hearing commenced, Carey Haughwout, Owen's counsel in the upcoming Slattery retrial,[6] informed the court that Owen had invoked the attorney-client privilege in the Slattery case. Haughwout then sought to stay the Worden postconviction proceeding until the Slattery retrial was completed or in the alternative to prohibit disclosure of confidential information concerning the Slattery case. Haughwout was concerned that information disclosed during the hearing would be used against Owen in the upcoming Slattery retrial. The court agreed to bar disclosure of privileged information.
At the hearing, Owen called Barry Krischer as his first witness. Krischer testified on direct examination that he had served as Owen's counsel during the original Slattery trial. He stated that his sole responsibility vis-a-vis Owen was to represent him in the Slattery case, that he played no role in the Worden case. In fact, Krischer testified that he told Owen at the time of trial that he did not want to hear anything about the Worden murder. Krischer noted, however, that he and Salnick did litigate the motion to suppress Owen's omnibus confession, portions of which were later introduced into evidence at both trials. When Krischer declined to answer any questions concerning this motion to suppress, collateral counsel terminated her direct examination of the witness. After the assistant attorney general finished cross-examining Krischer, collateral counsel declined to proceed any further with the evidentiary hearing, stating that to do so would violate the attorney-client privilege in the Slattery case. Owen claims that the court erred in subsequently denying his rule 3.850 motion. We disagree.
*514 A court's ruling on a matter related to the "course and conduct" of a proceeding is generally within the sound discretion of the court and will not be disturbed on review absent an abuse of discretion.[7] The attorney-client privilege is a basic, long-standing prerogative that promotes a client's right to effective legal representation:
Various reasons have historically been cited for the existence of the attorney-client privilege. The modern view is that the privilege promotes the administration of justice by "encouraging clients to lay the facts fully before their counsel." By encouraging full disclosure, a client is able to receive fully informed legal advice without the fear that his statements may later be used against him.
Brookings v. State, 495 So.2d 135, 139 (Fla.1986) (citation omitted). The privilege has been codified by the legislature:
A client has a privilege to refuse to disclose, and prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
§ 90.502(2), Fla. Stat. (1999). Although the privilege is statutorily based, it also possesses a constitutional dimension.[8]
This Court has held that when a defendant pursues an ineffectiveness claim against trial counsel, the defendant waives the attorney-client privilege as to that claim:
Thus, we hold that a lawyer who represents a client in any criminal proceeding may reveal communications between him and his client when accused of wrongful conduct by his client concerning his representation where such revelation is necessary to establish whether his conduct was wrongful as accused. This is so whether the lawyer is retained by the defendant or appointed by the State to represent him and includes lawyers serving as public defenders and their assistants.
Reed v. State, 640 So.2d 1094, 1097 (Fla. 1994) (quoting Wilson v. Wainwright, 248 So.2d 249, 250 (Fla. 1st DCA 1971)).[9]
In the present proceeding, by filing ineffectiveness and conflict of interest claims against trial counsel in the Worden case, Owen waived the attorney-client privilege in that case. Although he subsequently invoked the privilege in the Slattery case, he still was obligated to proceed in good faith in the present case to the extent that the privilege permitted. He did not do so. In fact, at the hearing below, he made no effort to introduce substantive evidence concerning the Worden trial. Instead, he called as his only witness Barry Krischer, i.e., his former trial counsel in the Slattery case. Krischer knew virtually nothing about the Worden trial and his testimony was guaranteed to implicate the privilege, which expressly applied only to the Slattery case. Further, although the court below agreed to bar disclosure of privileged information, Owen made no effort to proffer any substantive evidence that would have been excluded by the privilege.
*515 In short, Owen made no showing of prejudice. We find no abuse of discretion in the manner in which the court conducted the hearing.

III. CONCLUSION
As to Owen's Faretta[10] claim (i.e., claim 2), the principles underlying Faretta are applicable only when a defendant in a criminal case seeks to waive professional legal representation and proceed unrepresented. These principles are inapplicable here where Owen freely chose to be represented by counsel at the proceeding below and registered no objection to counsel's performance. The record shows that collateral counsel and Owen jointly made the strategic decision to end the evidentiary hearing.
Owen's ineffectiveness and conflict claim (i.e., claim 3) is a fact-based issue that requires development at an evidentiary hearing, which Owen-by his actions below-opted to forego. The claim thus is waived. His remaining claims are procedurally barred.[11]
Based on the foregoing, we affirm the trial court's order denying relief on Owen's first rule 3.850 motion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The court found that the following aggravating circumstances had been established: Owen previously had been convicted of a violent felony; the murder was committed during a burglary or sexual battery; the murder was especially heinous, atrocious, or cruel; and the murder was cold, calculated, and premeditated.
[2] The court considered the following mitigating circumstances: Owen's mother died when he was young; his alcoholic father committed suicide a year later; Owen and his brother were shuffled from one foster home to another until his brother finally ran away and left him; Owen was sexually and otherwise abused in the foster homes; Owen's mind "snapped" during the murder; and he had enlisted twice in the army and aspired to be a policeman.
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] The court found that an evidentiary hearing was required on the following claims: (1) Trial counsel rendered ineffective assistance in the guilt phase by failing to provide mental health experts with information necessary to conduct an accurate competency exam; (2) trial counsel rendered ineffective assistance in the guilt phase by failing to mount an insanity or any other defense and failing to call any defense witnesses; (3) attorneys Kohl and Krischer failed to disclose to Owen various conflicts of interest; (4) trial counsel was ineffective in the penalty phase by failing to investigate and present statutory and nonstatutory mitigating evidence and by presenting only one (minor) witness; (5) trial counsel was ineffective in failing to raise various issues. The court also deferred ruling on several additional claims.
[5] Owen raises the following claims: (1) The trial court should have stayed the hearing pending completion of the retrial on the Slattery murder; (2) the court should have conducted a hearing pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), when Owen opted not to proceed with the evidentiary hearing; (3) trial counsel was ineffective and suffered a conflict of interest; (4) the HAC instruction was improper under Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992); (5) the felony murder instruction was improper; (6) the "avoiding arrest" instruction was improper; (7) the "prior violent felony" instruction was improper; (8) the CCP instruction was improper; (9) details of prior violent felonies were improperly admitted during the penalty phase; (10) attorney Kirscher was ineffective during the suppression hearing; (11) the penalty phase instructions improperly shifted the burden of proof to the defendant; (12) the penalty phase jury was improperly instructed concerning its role in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (13) the prosecutor made inflammatory remarks during closing argument; (14) Owen should have been allowed to poll the jurors; (15) the court erred in failing to allow a change in venue; (16) Florida's capital sentencing statute is unconstitutional; (17) the video of the crime scene was unduly prejudicial; (18) the cumulative weight of errors deprived Owen of a fair trial.
[6] Retrial on the Slattery murder took place in 1999.
[7] See, e.g., Philip J. Padovano, Florida Appellate Practice 152 (2nd ed.1997).
[8] See, e.g., Myles v. State, 602 So.2d 1278, 1280 (Fla.1992) ("While the Florida Evidence Code creates a broad statutory attorney-client privilege ... some aspects of the attorney-client relationship take on a constitutional dimension in the criminal trial setting."); Mills v. State, 476 So.2d 172, 176 (Fla.1985) ("The attorney-client privilege arises in the context of a relationship having great significance for the protection of fundamental personal rights. For example, the ability to speak freely to one's attorney helps to preserve rights protected by the fifth amendment privilege against self-incrimination and the sixth amendment right to legal representation.").
[9] See also LeCroy v. State, 641 So.2d 853 (Fla.1994).
[10] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[11] Claims (4) through (18) are procedurally barred for the following reasons: (4) This claim could and should have been raised on direct appeal; (5) this claim could and should have been raised on direct appeal; (6) this claim could and should have been raised on direct appeal; (7) this claim could and should have been raised on direct appeal; (8) the sufficiency of the evidence required to establish this factor was raised and rejected on direct appeal, and no challenge was made to the instruction itself; (9) this claim could and should have been raised on direct appeal; (10) this claim was raised and rejected on direct appeal; (11) this claim could and should have been raised on direct appeal; to the extent Owen claims ineffectiveness, this claim is without merit since this Court repeatedly has held that the penalty phase instructions do not shift the burden; (12) this claim is procedurally barred since this Court repeatedly has held that Caldwell errors cannot be raised on collateral review; (13) this claim could and should have been raised on direct appeal; (14) the trial court granted Owen an evidentiary hearing on this issue, but Owen chose not to present any evidence on it; (15) this claim could and should have been raised on direct appeal; (16) this claim was raised and rejected on direct appeal, and the Court repeatedly has rejected this claim; (17) this claim could and should have been raised on direct appeal; to the extent Owen claims ineffectiveness, this claim is without merit since trial counsel objected to admission of the videotape; (18) this claim is procedurally barred per case law.